Jack Westmoreland DERRYBERRY, Jr., Petitioner-Appellee,

v.

Thomas Glen MARTIN, Respondent-Appellant.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 4, 1984.

Application for Permission to Appeal Denied by Supreme Court Feb. 25, 1985.

Horace E. Johns, Nashville, for petitioner-appellee.

Mary Leech, Nashville, for respondent-appellant.

## OPINION

TODD, Presiding Judge.

Jack Westmoreland Derryberry filed a petition to adopt Jeremy Thomas Martin Edwards, natural son of Thomas Glen Martin and Harriette Jeanne Edwards, now the wife of petitioner. The natural father has appealed from the Trial Court's adjudication of abandonment by the natural father and decree of adoption by the petitioner.

Appellant's first issue is as follows:

I.  Whether Martins' conduct constitutes abandonment under Tennessee law.

A.  Whether Martin had the requisite settled purpose to relinquish all claims to Jeremy.

B. Whether the proof shows that Martin absolutely, completely, and intentionally relinquished all interest in Jeremy.

C. Whether Martin's failure to pay support, legitimate and visit Jeremy are justifiable under Tennessee law.

D. Whether a finding of abandonment based on Martin's failure to pay child support constitutes a denial of Martin's constitutional right to the equal protection of the laws.

In respect to abandonment, the Trial Judge filed the following findings of fact:

1. The minor child was born out of wedlock on January 11, 1976, to the natural mother, then, Harriette Edwards.

2. The infant has been in the care, custody and control of the natural mother since its birth.

3. That the infant bears the mother's maiden name as stated in the Adoption Petition and Answer of father.

4. The natural father of the child is Thomas Glenn Martin, and he is a resident of Davidson County, Tennessee.

5. The natural mother and the natural father never married but did live together when the child was an infant.

6. The natural mother supported herself and the child as well as the natural father when he was unemployed.

7. The natural father did not legitimate the child or attempt to so do until the Adoption Petition was filed and an abandonment hearing requested.

8. This Court has found said child to be an abandoned child by Order dated November 9, 1982, as regarding the natural father, ...

The evidence supports more detailed findings as follows:

1. The natural father refused to marry the mother to legitimate the child.

2. He paid none of the expenses of the birth of the child.

3. In September, 1977, the mother and child permanently separated from the natural father.

4. Because of a violent episode, the child feared his father.

5. The natural father was told that he could not see the child again until he took steps to legitimate and support the child. He did not do so.

6. Documents were prepared to accomplish legitimation and assumption of support, but the natural father refused to execute them.

7. Since March, 1979, the natural father has had no contact with the child except a chance meeting when the child declined to talk to him.

8. There is no evidence of any support, gifts, or other evidence of concern for the child.

From the evidence, this Court concludes, as did the Trial Judge, that the natural father evidenced a settled purpose to relinquish all legitimate claims to the child; that his behavior evidenced an absolute, complete and intentional relinquishment of all legitimate interest in the child; that his failure to support legitimate and visit the child are not justifiable under Tennessee law; that any denial of rights of visitation were justified and conditioned upon the continued refusal to legitimate and support; that the finding of abandonment is justified, based upon the behavior of the natural father taken as a whole and not limited to failure to support; and that there has been no denial of equal protection of the law.

Appellant cites *In re: Knott*, 138 Tenn. 349, 197 S.W. 1097 (1917), in which the father and mother were separated, the mother consented to the adoption, but the father had no notice of the proceedings and did not consent thereto. The father filed a petition to set the adoption aside which was sustained by the Supreme Court which found that the father had not abandoned the child and was entitled to its custody. The case is distinguishable from the present case upon its facts.

Appellant also cites *In re: Dearing*, Tenn.App.1978, 572 S.W.2d 929. In that case, the natural father had filed a legiti-

mation petition six months before the petition for adoption. The Trial Court enjoined the prosecution of the legitimation suit, granted the subsequent petition for adoption, but limited the adoption by awarding the natural father visitation rights. This Court held that adoption and visitation rights of the father were irreconcilable, reversed the adoption decree and remanded for a hearing on legitimation prior to further proceedings on the adoption. The case is distinguishable from the present case upon timing of the proceedings and results reached.

Appellant cites *Fancher v. Mann*, 58 Tenn.App. 471, 432 S.W.2d 63 (1968) wherein this Court reversed an adoption by a stepfather over the objection of a natural father who was legally married to the mother and had regularly visited and supported the children under a divorce decree and had suspended support payments only because of extreme financial reverses. The case is distinguishable from the present case on its facts.

■ Appellant relies upon an unfortunate choice of words quoted from a New York trial court that a natural parent should "be given the benefit of every controverted fact". If this statement means what it purports to mean, and is the law, then the Courts have no power to resolve contradictions in testimony, but must accept all of the testimony as true. This cannot be the law. The quoted statement may be interpreted to mean that, where two equally reasonable inferences may be drawn from facts found by the Court, the inference favoring the natural parent should be adopted. This latter interpretation is an accurate statement of the law.

Appellant asserts that Tennessee Courts have always searched and found justification for the parents' failure to visit and support the child. The Trial Judge found no justification in the present case, and this Court agrees.

Appellant cites *Ex Parte Wolfenden*, 48 Tenn.App. 433, 348 S.W.2d 751 (1961). A casual perusal of the opinion in that case would have disclosed that the father of the child was constantly attentive to the child until he remarried and sought to remove himself and child from the home of a relative who refused to allow the child to move. The case is clearly not in point.

Likewise, the opinion of this Court in *Pierce v. Bechtold*, 60 Tenn.App. 478, 448 S.W.2d 425 (1969), cited by appellant, is readily distinguishable upon the facts.

■ Appellant has a seemingly inexhaustable store of excuses and rationales for his cavalier attitude toward his offspring. The Trial Judge did not consider them adequate, and neither does this Court. Appellants whole pattern of conduct has been that he accepts no responsibility as a parent but reserves to himself the privilege of injecting himself into the life of the child at such times as it pleases him to do so. Parenthood is not made of such flexible fabric. No parent has the right to abandon all responsibility, yet insist that the child be fed, housed, clothed, and nurtured by others but remain available to be claimed as an offspring to be visited at the whim of a derelict parent who would thereby deny the child the security and stable environment of an adoption.

■ Appellant insists that he has a right to "repent". This is a most unusual argument from one who claims that he has done no wrong.

In the view of this Court, the conduct of appellant is such as to disclose a settled disposition of irresponsibility such that whatever resolution might be belatedly expressed, probability of performance is remote, indeed.

Having refused to legitimate his offspring and create a stable home for him by marrying the mother, having refused to otherwise legitimate him, having failed and effectively refused to support him, and, with isolated exceptions, failed to show any attention to him, appellant has little standing to ask this Court to deprive the innocent child of the opportunity for a wholesome parental relationship in order to satis-

fy a claim of blood which has been ignored by appellant.

██ Appellant's third argument is that the Trial Court erred in failure to allow him to present proof as to the best interests of the child. Appellant's "Statement of the Case" has presented considerable difficulty to this Court because of failure to cite pages of the technical record where various proceedings may be found. The Trial Court heard evidence on three issues simultaneously, i.e. (1) abandonment, (2) adoption, and (3) legitimation. Appellant conceives that he was denied some right by the simultaneous hearing, but fails to cite the record which shows any timely objection by him or the tender by him of any evidence which was excluded. The complaint therefore will not be considered by this Court. Rule 6(b), Rules of Court of Appeals.

Finally, appellant insists that his rights to due process were denied in five respects.

First appellant complains of failure to conduct "a full hearing on the best interests of the child". This Court is satisfied that a sufficiently full hearing on this issue was held, and appellant cites nothing in the record to show otherwise.

██ Second, appellant complains that the child was not allowed to "testify in his own behalf". There is no citation to the record to support this complaint as required by Rule 6(b). Moreover, if such ruling occurred, in view of the tender years of the child it was within the discretion of the Trial Judge and was justified.

Next, appellant complains that the Trial Court refused to order a psychological examination of the child. Again the complaint is unsupported by citation to the record; and, if the ruling was made, it was discretionary and justified.

Appellant next complains that the Trial Court failed to appoint a guardian ad litem for the child. The complaint is supported by neither citation to the record nor authority.

Finally, appellant asserts that his constitutional rights were violated by penalizing him for non support. This complaint is likewise unsupported by citation to the record or authorities.

In summary, this Court concurs in each and every finding of fact of the Trial Judge, and each and every conclusion reached by her.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against appellant. The cause is remanded to the Trial Court for such further proceedings, if any, as may be necessary and proper.

Affirmed and remanded.

LEWIS and CANTRELL, JJ., concur.